## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------

ZEPHYR FLUID SOLUTIONS, LLC       :
      :
          Plaintiff,       :     Civil Action No.
      :
   v.       :
      :
PRIMO WATER CORPORATION       :
      :
          Defendant.       :

------------------------------------------------------------

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Zephyr Fluid Solutions, LLC, does hereby, through its attorneys, allege as follows:

### THE PARTIES

1.     Plaintiff, Zephyr Fluid Solutions, LLC (hereinafter "Zephyr" or "Plaintiff"), is a limited liability company organized and existing under the laws of the State of Connecticut, having a principal place of business at 14 Finance Drive, Danbury, Connecticut 06810.

2.     Upon information and belief, Defendant, Primo Water Corporation (hereinafter "Primo" or "Defendant"), is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 104 Cambridge Plaza Drive, Winston-Salem, North Carolina 27104.

### JURISDICTION

3.     This is a civil action for false advertising, commercial disparagement, and deceptive and unfair business practices in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), as amended, as well as under the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110b, and for Tortious Interference with Business Relations, Business

Defamation, Product Disparagement, and Unfair Competition, all in contravention of the common law of the State of Connecticut. Jurisdiction is conferred upon this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338(b). The amount in controversy is in excess of $75,000. This Court has supplemental jurisdiction over Zephyr's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are substantial and related.

4.     This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant directly, or indirectly through its agents, does business in this judicial district and has committed acts within this judicial district giving rise to this action. Defendant is subject to the personal jurisdiction of this Court and is amenable to service of process pursuant to the Connecticut long-arm statute, CONN. GEN. STAT. § 33-929(f), and Fed. R. Civ. P. 4(e). Requiring Defendant to respond to this action will not violate due process.

**VENUE**

5.     Plaintiff does business and has a principal place of business in this judicial district. Upon information and belief, Defendant directly, or indirectly through its agents, does business in this judicial district and has committed acts within this district giving rise to this action. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).

**FACTUAL BACKGROUND**

6.     Plaintiff, Zephyr, offers a full line of high quality water bottle racks, electronic lockers, and racking systems for use as custom retail display and distribution products for the beverage industry.

7.     One of Zephyr's products is a Bottle Return Cage. An exemplary image of Zephyr's Bottle Return Cage is shown on page 2 in Zephyr's Custom Retail and Distribution

2

Products for the Beverage Industry product brochure attached as Exhibit A.

8.      Zephyr's Bottle Return Cages are custom designed for use in large volume water retailers.  The Bottle Return Cage accepts both three (3) and five (5) gallon water bottles.  The Bottle Return Cage can dispense bar coded tickets for easy processing of returns by retailers.

9.      Zephyr's customers for its Bottle Return Cage include the Absopure Water Company ("Absopure").  Absopure celebrated its 100th anniversary in 2008, and has been privately owned by the Young family for over 50 years.  Headquartered in Michigan, Absopure branded water products (including Absopure Natural Spring Water, Cap 10, Vigor and Montreaux) are distributed nationwide through retail outlets and direct delivery to homes, offices and industry – as well as Absopure office coffee and refreshment services in the Midwest.  One of the top ten water companies in the United States, Absopure is a leader in recycling plastic bottles, and recently introduced the all-new, environmentally friendly Eco-Pak™ bottle, which is made from recycled bottles.

10.     Defendant, Primo, sells water dispensers and products including three-gallon and five-gallon water bottles.

11.     Primo provides return bins at various locations so consumers can return the empty plastic bottles to Primo.

12.     Primo is the owner by assignment of United States Patent No. D542,495, ("the '495 patent") entitled Bottle Return Apparatus, which issued on May 8, 2007.  A copy of the '495 patent is attached as Exhibit B.

13.     Primo is the owner by assignment of United States Patent No. D565,268, ("the '268 patent") entitled Bottle Return Apparatus, which issued on March 25, 2008.  A copy of the

3

'268 patent is attached as Exhibit C.

14.     Primo, Absopure, and other bottled water companies are competing for bids to sell five-gallon water bottles in stores owned by Meijer, Inc., among other customers.

15.     Meijer is a regional American hypermarket chain founded in 1934 and based in Grand Rapids, Michigan.  Meijer pioneered the modern supercenter concept in 1962.  About half of the company's 194 locations are located in Michigan, with additional locations in Illinois, Indiana, Ohio, and Kentucky.  The chain was ranked No. 18 on Forbes's 2008 list of "America's Largest Private Companies" and 19 in Fortune's 2008 "The 35 largest U.S. private companies".  Supermarket News ranked Meijer No. 12 in the 2007 "Top 75 North American Food Retailers" based on 2006 fiscal year estimated sales of $13.2 billion.  Based on 2005 revenue, Meijer is the twenty-fifth largest retailer in the United States.

16.     On or about November 10, 2010, Absopure purchased a Zephyr Bottle Return Cage to test and demonstrate for Meijer as part of their bid to sell 5-gallon water bottles in Meijer's stores.

17.     On or about November 2010, Meijer informed Absopure that Primo claimed that Primo has a patent that covers Zephyr's Bottle Return Cage that would preclude Absopure from using the Zephyr product for this bid.

18.     Upon information and belief, Primo has made similar false statements to other potential customers.

19.     On or about December 3, 2010, Primo filed a complaint in United States District Court for the Middle District of North Carolina alleging that the Zephyr Bottle Return Cage infringed the '495 and '268 patents.  The Complaint has not been served.

20.     The test for infringement of a design patent is whether an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design.

21.     Design patent claims are generally narrow in scope because design patent protects the non-functional aspects of an ornamental design as shown in the patent.  There are no portions of a claimed design that are immaterial or unimportant.

22.     Design patent protection is even narrower in a field that is crowded with many references relating to the design of the same type of product.

23.     The claimed designs in the '495 and '268 patents comprise primarily functional elements that are not entitled to design protection.

24.     The beverage industry is crowded with display and distribution products.

25.     Accordingly, the '495 and '268 designs are afforded very narrow, if any, patent protection.

26.     The Zephyr Bottle Return Cage is very different from the claims of the '495 and '268 patents, and if anything, is closer to the prior art than to the claimed designs.

27.     Primo knew or reasonably should have known that the Zephyr Bottle Return Cage is blatantly not covered by the '495 and '268 patents.

28.     Primo knew or reasonably should have known that its claims that the Zephyr Bottle Return Cage infringed the '495 and '268 patents were false.

29.     Upon information and belief, Primo's false statements to potential customers regarding Zephyr's alleged infringement were made in bad faith.

30.     Zephyr has been harmed as a direct result of Primo's false claims of patent

infringement against the Zephyr Bottle Return Cage.

## COUNT I
## Lanham Act, § 43(a) False Advertising, Commercial Disparagement, Deceptive And Unfair Business Practices

31.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-30 of this Complaint.

32.   This is a claim for federal false advertising, commercial disparagement, and deceptive and unfair business practices under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

33.   Defendant Primo violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by stating multiple literally false, deceptively misleading, and or wrongfully disparaging statements in the marketplace concerning Zephyr's Bottle Return Cage product.

34.   Defendant knew and/or reasonably should have known that its claims that Zephyr's Bottle Return Cage infringed its patents were false and/or misleading.

35.   By virtue of these and other acts, Defendant has introduced into the market numerous literally false and/or deceptively misleading statements about Zephyr to the commercial detriment of Zephyr and to the commercial advantage of itself.

36.   Upon information and belief, the Defendant knowingly and willfully made these literally false and/or deceptively misleading statements.

37.   Upon information and belief, the Defendant made these literally false and/or deceptively misleading statements in bad faith.

38.   Defendant's aforesaid acts have injured and violated the rights of Zephyr and caused it to lose sales and business in an amount to be determined at trial, but which amount is at

least in excess of $75,000.  Defendant's acts complained of herein have caused damage to Zephyr and have irreparably injured the public recognition, reputation, and goodwill associated with Zephyr's Bottle Return Cage product.  Defendant's acts were intended to and have had the effect of casting a cloud over the Bottle Return Cage product in the minds of potential customers.  The Defendant's acts have and, unless enjoined, will continue to cause Zephyr to lose sales.  Further, by these acts, Defendant has irreparably injured Zephyr and such injury will continue unless enjoined by this Court.

## COUNT II
## CONNECTICUT UNFAIR TRADE PRACTICES ACT

39.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-38 of this Complaint.

40.     Defendant has committed unfair and deceptive acts and engaged in unfair and deceptive practices in violation of CONN. GEN. STAT. § 42-110b.

41.     Defendant has made false and misleading statements to potential customers in the course of its trade or business by falsely stating that the Zephyr Bottle Return Cage infringed the '495 and '268 patents.

42.     Defendant knew and/or reasonably should have known that its claims that Zephyr's Bottle Return Cage infringed its patents were false and/or misleading.

43.     By virtue of these and other acts, Defendant has introduced into the market numerous literally false and/or deceptively misleading statements about Zephyr to the commercial detriment of Zephyr and to the commercial advantage of its competitors.

44.     Upon information and belief, the Defendant knowingly and willfully made these

literally false and/or deceptively misleading statements.

45.    Upon information and belief, the Defendant made these literally false and/or deceptively misleading statements in bad faith.

46.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff has been damaged.

## COUNT III
## CONNECTICUT COMMON LAW TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

47.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1-46 of this Complaint.

48.    This is an action for tortious interference with business relations arising under the common law of the State of Connecticut.

49.    Zephyr had a business relationship with actual and potential customers, including Absopure and Meijer.

50.    Defendant was aware of Zephyr's business relationships with actual and potential customers, including Absopure and Meijer.

51.    Defendant intentionally and improperly interfered with Zephyr's business relations by falsely stating to actual and potential customers, including Meijer, that the Zephyr Bottle Return Cage infringed the '495 and '268 patents.

52.    Defendant knew and/or reasonably should have known that its claims that Zephyr's Bottle Return Cage infringed its patents were false and/or misleading.

53.    Upon information and belief, the Defendant made these literally false and/or deceptively misleading statements in bad faith.

8

54.     Defendant's willful acts of tortious interference constitute fraud, intimidation, and/or malice.

55.     The statements and actions described in the preceding paragraphs constitute intentional interference with Zephyr's economic relations.  The statements and actions were made and done knowingly and intentionally for an improper purpose or by improper means.  The statements and actions have been a material and substantial factor in inducing others, with which the Zephyr had advantageous business relationships, not to purchase Zephyr's products, causing Zephyr financial loss in excess of $75,000.00, and such acts will result in further damage and irreparable injury if Defendant is not enjoined by this Court.

56.     Accordingly, Zephyr is entitled to exemplary damages.

## COUNT IV
## COMMERCIAL DISPARAGEMENT, BUSINESS DEFAMATION, AND TRADE LIBEL

57.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-56 of this Complaint.

58.     This is an action for commercial disparagement, business defamation, and trade libel arising under the common law of the State of Connecticut.

59.     Defendant unjustifiably interfered with Zephyr's right to pursue its lawful business by falsely stating to actual and potential customers, including Meijer, that the Zephyr Bottle Return Cage infringed the '495 and '268 patents.

60.     Defendant knew and/or reasonably should have known that its claims that Zephyr's Bottle Return Cage infringed its patents were false and/or misleading.

61.     Upon information and belief, the Defendant made these literally false and/or

9

deceptively misleading statements in bad faith.

62.     Defendant's defamatory statements constitute. fraud, misrepresentation, intimidation and/or molestation.

63.     Defendant acted maliciously in interfering with Plaintiff's business prospects.

64.     Defendant has, through its false and misleading representations, caused injury to Zephyr's reputation and standing in the business community, and has caused damages to Zephyr in an amount in excess of $75,000.00, and such acts will result in further damage and irreparable injury if Defendant is not enjoined by this Court.

## COUNT V
## PRODUCT DISPARAGEMENT

65.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-64 of this Complaint.

66.     This is an action for product disparagement arising under the common law of the State of Connecticut.

67.     The Defendant has, through the exemplary acts and statements described in the preceding paragraphs, disparaged and/or defamed Zephyr's products.

68.     Defendant disparaged and/or defamed Zephyr's by falsely stating to third parties, including Meijer, that the Zephyr Bottle Return Cage infringed the '495 and '268 patents.

69.     Defendant knew and/or reasonably should have known that its claims that Zephyr's Bottle Return Cage infringed its patents were false and/or misleading.

70.     Upon information and belief, the Defendant made these defamatory statements in bad faith.

71.     Defendant's defamatory statements constitute. fraud, misrepresentation, intimidation and/or molestation.

72.     Defendant acted maliciously in interfering with Plaintiff's business prospects.

73.     As a result of the Defendant's acts and statements, Zephyr has lost sales and suffered other injury, causing damages to it in excess of $75,000.00.

74.     Such acts and statements as described in the preceding paragraphs will result in further damage and irreparable injury if Defendant is not enjoined by this Court.

## COUNT VI
## UNFAIR COMPETITION

75.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-74 of this Complaint.

76.     This is an action for unfair competition arising under the common law of the State of Connecticut.

77.     The Defendant has, through the statements including those described in the preceding paragraphs, engaged in a pattern of conduct that constitutes unfair competition, including, *inter alia*, preventing potential customers of Zephyr's products from reaching informed market decisions by falsely stating to actual and potential customers, including Meijer, that the Zephyr Bottle Return Cage infringed the '495 and '268 patents.

78.     Defendant knew and/or reasonably should have known that its claims that Zephyr's Bottle Return Cage infringed its patents were false and/or misleading.

79.     Upon information and belief, the Defendant made these literally false and/or deceptively misleading statements in bad faith.

11

80.     The Defendant's unfair competition has caused damages to Zephyr in an amount in excess of $75,000.00, and will result in further damage and irreparable injury if Defendant is not enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

A.      Declaring that Primo has violated Section 43(a) of the Lanham Act, 15 U.S.C.§ 1125(a)

B.      Declaring that Primo has violated the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110b.

C.      Declaring that the aforesaid violations have been knowing and willful.

D.      Declaring that Defendant has committed tortious interference with business relations under the laws of Connecticut.

F.      Declaring that the Defendant has committed business defamation under the laws of Connecticut.

G.      Declaring that the Defendant has engaged in product disparagement under the laws of Connecticut.

H.      Declaring that the Defendant has committed acts of unfair competition under the laws of Connecticut.

I.      Preliminarily and permanently enjoining the Defendant, its officers, subsidiaries parents, divisions, agents, servants, employees and attorneys, and those persons in active concert or participation with Defendant who receive actual notice of the order by personal service or

12

otherwise, pursuant to 15 U.S.C.§ 1125(a) and the Connecticut Unfair Trade Practices Act,

CONN. GEN. STAT. § 42-110b, from:

     1.     Making any false, misleading, and/or disparaging

     statements with respect to Zephyr and its products, including but

     not limited to its Bottle Return Cage product;

     2.     Otherwise interfering with Zephyr's business relations; and

     3.     Unfairly competing with Zephyr in any manner whatsoever.

     J.     Ordering Defendant to deliver up for destruction all literature, brochures,

pamphlets, technical papers, information, and all other materials containing a literally false

and/or deceptively misleading statement concerning Zephyr and/or the Bottle Return Cage

product pursuant to 15 U.S.C.§ 1125(a) and the Connecticut Unfair Trade Practices Act, CONN.

GEN. STAT. § 42-110b.

     K.     Ordering Defendant to file with this Court and serve on Zephyr within ten (10)

days after the service of any temporary restraining order or injunction, a report, in writing, under

oath, setting forth in detail the manner and form in which the Defendant has complied with the

injunction.

     L.     Ordering Defendant to account to Zephyr for any and all profits derived by

Defendant and all damages sustained by Zephyr by reason of Defendant's acts complained of

herein.

     M.     Ordering Defendant to pay over to Zephyr all damages which Zephyr has

sustained as a consequence of the acts complained of herein, subject to proof of trial, and that

Zephyr be awarded Defendant's profits derived by reason of said acts, all as determined by said

accounting.

N.      Declaring that Defendant's acts as complained of herein shall be deemed willful, and that this be deemed an exceptional case pursuant to 15 U.S.C. § 1117(a).  Further that Zephyr be entitled to treble damages pursuant to 15 U.S.C. § 1117(a).

O.      Declaring that Zephyr be entitled to punitive damages pursuant to CONN. GEN. STAT. § 42-110b.

P.      Ordering that Zephyr recover exemplary damages.

Q.      Ordering Defendant to account for all gains, profits, advantages, and unjust enrichment derived from its violations of law.

R.      Granting Zephyr its costs and disbursements in this action, including but not limited to reasonable attorney's fees.

S.      Granting Zephyr such other and further relief as this Court may deem just.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: January 10, 2011                    By: _____
                                          Michael J. Rye, Esq. (ct18354)
                                          **CANTOR COLBURN LLP**
                                          20 Church Street, 22nd Floor
                                          Hartford, CT 06103
                                          (860) 286-2929
                                          (860) 286-0115 (facsimile)
                                          mrye@cantorcolburn.com

                                          ATTORNEY FOR PLAINTIFF
                                          ZEPHYR FLUID SOLUTIONS, LLC

14